FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 MAY 15 PM 1:43

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHERREL JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO.:** 07-2882 |
| **THE CITY OF NEW ORLEANS;** | **SECTION:** |
| **MAYOR C. RAY NAGIN;** | **SECT. M** |
| **NEW ORLEANS POLICE DEPARTMENT;** | **MAGISTRATE:** **MAG. 5** |

**THE CITY OF NEW ORLEANS;**
**MAYOR C. RAY NAGIN;**
**NEW ORLEANS POLICE DEPARTMENT;**
**FORMER NOPD SUPERINTENDENT**
**EDDIE COMPASS; SGT. KENNETH BOWEN;**
**OFFICER ROBERT FAULCON;**
**OFFICER ANTHONY VILLAVASO;**
**OFFICER ROBERT GISEVIUS;**
**OFFICER ROBERT BARRIOS;**
**OFFICER MIKE HUNTER;**
**OFFICER IGNATIUS HILLS;**
**DEPUTY CHIEF WARREN RILEY;**
**CAPTAIN ROBERT BRADY;**
**CAPTAIN JOHN BRYSON;**
**LT. M. LOHMAN;**
**DAVID RYDER, INDIVIDUALLY AND**
**IN HIS OFFICIAL CAPACITY AS**
**DEPUTY SHERIFF OF**
**ST. LANDRY SHERIFF'S OFFICE;**
**ABC INSURANCE COMPANY**

**FILED:** _____            _____
                                                                **DEPUTY CLERK**

## COMPLAINT

    **NOW INTO COURT,** through undersigned counsel comes plaintiff Sherrel Johnson, of full

age, a resident of and domiciled in East Baton Rouge Parish, Louisiana, United States of America,

who respectfully represents:

### JURISDICTION

1.    Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1331, and 1343. This

Fee_350.00
Process_____
Dktd_____
CtRmDep_____
Doc. No_____

is an action authorized by U.S.C. § 1981, et seq., especially § 1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom and/or usage of rights guaranteed the plaintiff's by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2.   This Honorable Court's supplemental jurisdiction is also invoked, pursuant to 28 U.S.C. § 1367, as to all matters cognizable under Article 1, § 2 (due process), § 3 (individual dignity), § 5 (privacy), § 7 (expression) and § 9 (petition) of the Louisiana Constitution of 1974 and dialectal laws of the State of Louisiana, including Article 2315 of the Louisiana Civil Code.

## PARTY PLAINTIFF

3.   Plaintiff Sherrel Johnson is a person of full age of majority, residing in and domiciled in the Parish of East Baton Rouge, State of Louisiana.  Sherrel Johnson is the mother of James Brissette, age 19 at the time of his death.

## PARTY DEFENDANTS

4.   **The City of New Orleans, Louisiana**, is a municipal corporation organized under the laws of the Sate of Louisiana with capacity to sue and be sued.

5.   **The Honorable C. Ray Nagin**, in his capacity as Mayor of the City of New Orleans, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was the duly appointed Mayor of the City of New Orleans.

6.   **The New Orleans Police Department**, is a municipal corporation organized under the laws of the State of Louisiana with capacity to sue and be sued.

7.   **Defendant Eddie Compass** was a Superintendent of Police for New Orleans at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana.

8.   **Defendant Sergeant Kenneth Bowen** was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana.

9.   **Officer Robert Faulcon**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Houston, Texas.

10.  **Officer Anthony Villavaso**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana.

11.  **Officer Robert Gisevius**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Mandeville, Louisiana.

12.  **Officer Robert Barrios**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana.

13.  **Officer Mike Hunter**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Slidell, Louisiana.

14.  **Officer Ignatius Hills**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana.

15.  **Deputy Chief Warren Riley**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana;

16.  **Captain Robert Brady**, was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish

Louisiana;

17.    **Captain John Bryson,** was a member of the New Orleans Police Department at all pertinent times herein and is believed to be a resident of and domiciled in Orleans Parish, Louisiana;

18.    **Lt. M. Lohman,** was a member of the New Orleans Police Department at all pertinent times herein is believed to be a resident up and domiciled in Orleans Parish Louisiana;

19.    **David Ryder,** was at all pertinent times herein, a Deputy Sheriff of the St. Landry Parish Sheriff's Office and was acting in his official capacity as such at all pertinent times herein

20.    **ABC Insurance Company,** alleged on information and belief to be a foreign insurer authorized to do and/or doing substantial business in Louisiana and within this parish.


### SUMMARY OF THE CASE

21.    This is an action against the defendants named hereinabove on behalf of Sherrel Johnson, a private citizen, whose rights, privileges and immunities are guaranteed to all citizens in which rights, privileges and immunities were denied under color of law by the defendants named herein through direct, intentional and/or negligent acts.

### STATEMENT OF FACTS

22.    On August 29, 2005, Hurricane Katrina devastated southeast Louisiana leaving a number of the citizens of New Orleans stranded, without food and water and with no meaningful way to communicate with the outside world.

23.    Among those New Orleans citizens who did not evacuate, James Brissette chose to remain with his family in his home in east New Orleans, Louisiana.

24.    After the storm hit, James Brissette left his home to see if he could locate relatives and friends and never returned to his home with his mother.

25.     Plaintiff Sherrel Johnson did not know until June 6, 2006 what had become of her son. She had submitted her DNA to Find a Family Network located in Baton Rouge where she was then living. On June 6, 2006, she was told by a representative of Find A Family that her son James Brissette had died. However, she was not told how her son had died and she assumed that he had drowned. It was not until shortly before certain defendants herein were indicted for first-degree murder that she learned her son had been shot and killed by one or more of the defendants herein. She also learned, even more recently, that after her son James had left home to attempt to locate family members and friends, he saw and began to stay with his friend José Holmes and members of José's family.

26.     On Sunday, September 4, 2005 at approximately 9:00 a.m., a decision was made by James Brissette and others to cross the Danzinger Bridge to retrieve water and food from the Winn-Dixie.   James Brissette, Susan Bartholomew, Leonard Bartholomew, Sr., Leisha Bartholomew and Leonard Bartholomew, Jr. left together on foot across the Danzinger Bridge.

27.     On September 4, 2005, when James Brissette was on or near Danziger Bridge, suddenly and without warning, the defendant police officers named herein began firing in the direction of James Brissette and others.  James was struck by bullets fired from one or more of the defendants listed hereinabove.

28.     Prior to and at the time of the shootings, James Brissette was not armed, did not pretend to have a weapon and posed no threat to defendants herein.

29.     There was no probable cause and no reasonable justification for the actions taken by the defendant officers or for the force used against James Brissette or anyone else near him. The force used was excessive, unjustified and inexcusable.  Defendants Sergeant Kenneth

Bowen, Officer Robert Gisevius, Officer Anthony Villavaso and Officer Faulcon have all been charged with first degree murder; Officer Robert Barrios, Officer Ignatius Hills and Officer Mike Hunter have all been charged with attempted first degree murder.

30.  Plaintiff Sherrel Johnson did not know that her son had been shot and killed by New Orleans Police Department employees or even that, for certain, her son had died until shortly before some of the defendants named herein were indicted for first degree murder.

31.  During the time of this incident, the New Orleans Police Department was in a state of collapse  due to the failure of leadership and the actions of defendants Mayor Nagin, then NOPD Superintendent Eddie Compass, and Deputy Chief of Police Warren Riley. Despite ample forewarning and information, these defendants failed to properly plan and/or to insure the execution of those plans which did exist, to protect the citizens of New Orleans, their persons, their properties and safety, including James Brissette, from harm due to natural or human elements in the midst of a major hurricane event occurring in the City of New Orleans.

32.  Defendants Nagin, Compass and Riley failed to ensure that the city, its citizens and its police department were adequately prepared to respond to such an event and instead allowed officers and supervisors of the NOPD to operate with virtually no oversight or accountability, with suspended or eliminated policies, and with procedures and practices which should have provided checks and balances and control over the police department.  They failed to take appropriate steps to provide adequate security, shelter, transportation, food, water or medical care for the citizens of the city or for its police officers.  They failed to prevent or curtail looting by citizens or by police officers thereby endangering the lives of New Orleans citizens including James Brissette and plaintiff Sherrel Johnson. They failed to insure that

there was adequate communication and coordination among law enforcement and rescue agencies and individuals. They were, at all pertinent times herein, acting under color of law and within the course and scope of their appointment for the City of New Orleans and/or the New Orleans Police Department.

33.   Defendants Nagin, Compass and Riley must have known or should have known that the department's infrastructure and command structure had collapsed and was no longer operational. They were aware or should have been aware that many officers were mentally, emotionally, and physically exhausted and on the verge of collapse. Yet, they failed to conduct any screening or evaluation of officers to determine their fitness for duty and instead, permitted officers (including those who were not fit) to obtain and use non-departmental approved weapons. They discontinued to exercise any meaningful control or supervision over officers.

34.   Defendant Compass, as Superintendent of Police, and defendant Riley, as Deputy Chief, failed to insist upon accountability and discipline of officers under his command and communicated, directly or indirectly, to those beneath him in line of authority a message that encouraged lack of normal discipline and protocol and, indirectly, encouraged the lawlessness which occurred and resulted in the death of James Brissette.

35.   All of the actions by defendants described herein took place under color of law and within the course and scope of their employment with the City of New Orleans.

36.   Defendant, NOPD Lt. M.. Lohman was responsible for supervision, monitoring, training, discipline, control and oversight of the activities of defendants Barrios, Hills, Hunter, Villavaso, Faulcon and Sgts. Bowen, Gisevius and Kaufman and was, at all pertinent times, acting under color of law and the course and scope of his employment with the City of New

Orleans.

37.    Defendant NOPD Captains Robert Brady and John Bryson, both of full age and residents of and domiciled in the Eastern District of Louisiana, at all pertinent times herein, were Captains of the Fifth and Seventh NOPD Districts and were responsible for the supervision, monitoring, training, discipline, control and oversight of defendants Barrios, Hills, Hunter, Villavaso, Faulcon, Bowen Gisevius and Lohman and were, at all pertinent times, acting under color of law and within the course is going to their employment for the New Orleans Police Department.

38.    Defendant David Ryder is a person full age of majority and alleged, upon information believed to be a resident of St. Landry Parish, Louisiana.  It is alleged upon information and belief that he was employed as a deputy with the St. Landry Parish Sheriff's office and/or Sheriff Howard Zerangue, Sr. and, in all pertinent times herein, acting under color of law in concert with and in association with the other named defendants herein.  At all times pertinent herein, Ryder's actions were ratified, condoned and approved by the co-defendants. He is sued both individually and in his official capacity.

## CAUSES OF ACTION

39.    Plaintiff re-alleges paragraph 1 - 38.

40.    The actions of defendant Bowen, Faulcon, Villaraso, Gisevius, Barrios, Hunter, and Hills in assaulting, shooting and killing James Brissette, and in failing to act to prevent said abuse, despite having had the opportunity and duty to do so, violated the rights of James Brissette as guaranteed under the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution, to privacy, to liberty, to be left alone, to travel unfettered, to due process, to equal protection, to be free from unreasonable search and seizure, and to be free from

unjustifiable and excessive use of force, all in violation of 42 U.S.C.§ 1983.

41.  The defendants, acting together and under color of law, engaged in a course of conduct and otherwise conspired among themselves to commit those acts described herein and to deprive James Brissette of his constitutional rights as set forth herein.

42.  The defendants had knowledge of the wrongs done and conspired to be done, as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so in violation of 42 U.S.C. § 1983.

43.  The City of New Orleans had the power to prevent or aid in the prevention of these wrongs as did defendant Mayor C. Ray Nagin, the New Orleans Police Department and former NOPD Superintendent Eddie Compass and yet failed or refused to do so in violation of 42 U.S.C. § 1983.

44.  Plaintiff shows that the conduct, acts and omissions of defendants herein include, but are not limited to:

   1.  Insofar as the individuals engaged in the shooting on Danzinger Bridge, the intentional, reckless, wilful, wanton conduct in shooting unarmed individuals, including James Brissette, could pose no apparent or real threat to defendants herein or to anyone else.

   2.  Failing to properly screen before hiring and failing to properly supervise, discipline, train or control police officers and supervisors under its jurisdiction and control, including the defendant officers, supervisors and commanders.

   3.  Failing to provide adequate or reasonable supervision, discipline, monitoring or control of officers or supervisors prior to and during the aftermath of the effects of Hurricane Katrina, including the defendants herein, so that officers' conduct and treatment of citizens and visitors to the community was not adequately monitored or supervised, there was no meaningful evaluation or scrutiny regarding the treatment of citizens by officers and supervisors were not held accountable for the action of their subordinates.

   4.  Failing to adequately or properly investigate allegations of misconduct and/or violations of law by police officers, supervisors or commanders or to properly initiate

or conduct investigations of officers, supervisors or commanders suspected of misconduct and/or violations of law and instead tolerating the misconduct and mistreatment of citizens, including the actions of defendant officers, supervisors and commanders.

5.　　Failing to take reasonable and necessary steps to properly investigate, charge, maintain and defend disciplinary action for misconduct against officers, supervisors or commanders, so that disciplinary investigations and actions, when taken, were frequently undermined, with the result that they were frequently abandoned, reduced or lost on appeal with a corresponding decay and decline in professionalism, accountability and discipline in the police department, to the detriment of the civil rights of residents and visitors of the City.

6.　　Failing to keep accurate and reasonable records of incidents involving allegations of police misconduct and the investigation, handling and resolution of those incidents, in order to avoid public scrutiny and accountability as to the extent of the misconduct and the inability of the department to police itself.

7.　　Failing to conduct appropriate in-service training, re-training or enhanced supervision of officers who were known or believed or suspected to have engaged in misconduct but for whom disciplinary action was not available for whatever reason.

8.　　Failing to reasonably or appropriately monitor civil litigation or police misconduct revealed through criminal proceedings so as to take corrective and/or disciplinary action when necessary, including the actions of the defendant officers, supervisors and commanders.

9.　　Failing to keep accurate or easily accessible records of the amount of money spent by the City in defending, settling and paying judgments in litigation involving misconduct by police personnel, so as to avoid accountability and scrutiny of the extent of the problem of police misconduct.

10.　　Failing to properly operate, maintain and staff an adequate "early warning system" to flag police personnel for whom there is concern regarding improper behavior or violation of citizens' rights or emotional or psychological conditions which could lead to violation of citizens' rights and to institute appropriate monitoring, supervision, training or intervention regarding said officers.

11.　　Failing to properly operate, maintain and staff an adequate internal investigative agency to identify, investigate and take appropriate action against police personnel when there is available information indicating officer has violated a citizen's rights or otherwise engaged in misconduct, including but not limited to failing to keep adequate or reasonable records of citizen calls and complaints, failing to conduct meaningful investigation or analysis of patterns of misconduct, failing to conduct pro-active investigations or other appropriate or reasonable measures to protect

citizens from abuse of their rights by police officers.

12.     Failure to establish a reliable, professional system for independent and objective monitoring of the NOPD's policies, practices, procedures, customs and operations so as to insure that professional standards and "best practices" are in place and are being implemented.

13.     Failure to have adequate or reasonable plans, and failure to implement those plans, to protect the rights, safety and well-being of New Orleans' residents, visitors, property and pets during a situation where a hurricane, in particular a potentially serious and/or devastating hurricane, is threatening to and does impact the City of New Orleans.

14.     Authorizing, permitting ratifying and condoning policies, practices, customs and procedures whereby police officers and supervisors who were operating under extremely stressful circumstances during the aftermath of Hurricane Katrine were,

        A.      permitted to operate virtually on their own, with very little if any communication, supervision or oversight;
        B.      permitted to use weapons which were not departmental approved and for which the department had failed to establish any oversight or control, for which officers were not adequately trained or certified and which were inappropriate for police use;
        C.      permitted to continue to work as police officers even though they were physically, emotionally and mentally unfit for duty;
        D.      permitted to suspend or ignore professional standards and operating procedures for police work, including preserving and gathering evidence and documenting and reporting incidents;
        E.      permitted to engage in unlawful activities which contributed to the atmosphere of lawlessness that endangered the lives and safety of citizens and police alike.

15.     Condoning, approving and authorizing a culture and environment within the NOPD in which NOPD personnel, including the defendants herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory or command officers and that their misconduct and/or unlawful actions would not be thoroughly investigated or sanctioned, but would be approved and tolerated.

16.     Failing to adequately hold supervisory or command officers responsible for misconduct of their subordinates.

17.     Other acts and/or omissions which may be shown through discovery or at trial.

18.     Generally, the failure of these defendants to act with the required degree of care commensurate with the existing situation.

45.    The acts and omissions listed above were done with negligence, gross negligence and/or intent in violation of Louisiana Statutory and Constitutional Law and constitute wrongful death, assault, battery, fault and violation of his rights to privacy, to liberty, to be left alone, to locomotion, to travel, to due process, to equal protection, to be free from unreasonable search and seizure and to be free from unjustifiable and excess use of force under state law.

46.    The defendant City of New Orleans negligently hired, retained, supervised and failed to discipline and entrusted the defendants in violation of Louisiana law.

## DAMAGES

47.    As a result of the aforementioned fault and violations on the part of defendants herein, Sherrel Johnson, mother of James Brissette, suffered the following damages:

A.    Funeral and related expenses;

B.    Conscious pain and suffering and fear of James Brissette prior to death;

C.    Physical pain and suffering of James Brissette prior to death;

D.    Loss of support resulting from the death of James Brissette;

E.    Loss of love, companionship, and affection of and for her son;

F.    Extreme mental anguish and distress over the loss of her son;

G.    Plaintiff is also entitled to and plaintiff seeks punitive damages against the individual defendants.

H.    Plaintiff is entitled to and seeks attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that, after due proceedings are had, that there be judgment in her favor and against all defendants, jointly, severally and *in solido*, for the damages enumerated above and together with reasonable attorney's fees and costs of these proceedings with legal and judicial interest thereon to be awarded from date of loss until paid and for all costs of these proceedings. Plaintiff also prays for trial by jury herein. Plaintiff also prays for all other relief that may be just and proper.

Respectfully Submitted this 14th day of _____ May _____ , 2007.

deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ, L.L.P.

By: _____

John W. deGravelles - #04808
618 Main Street
Baton Rouge, Louisiana 70801-1910
Telephone: 225/344-3735
Facsimile: 225/336-1146

By: _____

Terry Bonnie - #22007
Attorney At Law
533 Spain Street
Baton Rouge, Louisiana 70802
Phone: 225/383-2050
Facsimile: 225/383-9111